IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-243-FL

| | |
|---|---|
| MICHAEL E. HOOKER, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-30, DE-34] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael E. Hooker ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for Widower's Insurance Benefits ("WIB")[1] and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for WIB and SSI on 3 August 2007, alleging

---

[1] Disability under WIB is determined in the same manner as disability under SSI. *See* 42 U.S.C. § 402(f)(1)(B)(ii), (8).

disability beginning 1 October 2003. (R. 6). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 14 December 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 30, 48-50). On 28 January 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-29). On 17 March 2011, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper credibility

3

assessment; (2) improper evaluation of state agency opinions; and (3) an unresolved conflict between the ALJ's residual functional capacity ("RFC") and step four findings. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1-2.[2]

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: hypertension and mild degenerative disc disease ("DDD"). *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 21-22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work.[3] *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 23-24). At step four, the ALJ concluded

---

[2] Claimant's third assignment of error is identified within his second argument. *See* Pl.'s Mem. at 9.

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 55 years old and unemployed. (R. 34-35). Claimant has a high school education. (R. 34). Claimant's past work experience includes truck driver/loader and carpet installer. (R. 36, 38).

Claimant testified he is unable to work due to high blood pressure, which he described as his "main" problem, as well as arthritis, which exists "from [his right] foot to my neck," and shortness of breath. (R. 39, 44, 46). Claimant takes blood pressure medication which helps control his blood pressure "sometimes." (R. 46). Claimant testified that when his blood pressure is high, his neck experiences soreness and his head "feels like it's going to blow up." (R. 47). Claimant testified to experiencing blurry vision for a "long time" but does not wear corrective lenses. (R. 44). As a result of Claimant's arthritis, he walks with a cane. (R. 39).

Claimant testified that he is unable to lift more than 6-7 pounds, can walk no more than 10 minutes without requiring a break, experiences shortness of breath after walking only 25 feet, can stand up to 15 minutes and has difficulty reaching over his head with his right arm. (R. 39-40, 44). Claimant testified that he has no difficulty sitting. (R. 40). Claimant has little energy and spends his days mostly "lay[ing] around." (R. 41-42). Claimant testified that his household chores are limited to taking out trash and some meal preparation (e.g., sitting down and cutting onions or slicing tomatoes). (R. 41). Claimant ventures out of his home approximately 3-4 times in a month and does

not engage in any social activities. (R. 45).

Upon questioning by the ALJ as to "evidence in the file about drinking alcohol," Claimant testified he drank "three or four beers" the day before the hearing while watching football and that the longest period he can remember going without drinking was during his year-long incarceration "about six years" prior to the hearing. (R. 43).

## III. Vocational Expert's Testimony at the Administrative Hearing

Rick Fleming testified as a VE at the administrative hearing. (R. 30, 48-50). After the VE's testimony regarding Claimant's past work experience, which included medium (semi-skilled) and heavy work (skilled) (R. 49), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work involving no hazards. *Id.* The VE testified in the negative but stated the hypothetical individual could perform the following unskilled light jobs: (1) assembly, small products (DOT #739.687-030); (2) ticket taker (DOT #344.667-010); and (3) assembly, production (DOT #706.687-010).

## DISCUSSION

### I. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 5. In particular, Claimant argues that the ALJ improperly penalized Claimant for failing to seek treatment that he could not afford. *Id.*

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d

6

at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's subjective complaints and found that Claimant had a medically determinable impairment reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 21-23). In reaching this conclusion, the ALJ noted the following: (1) lack of treatment from an orthopedic specialist; (2) lack of objective findings establishing significant DDD; (3) use of over-the-counter medications for DDD

on an infrequent basis; (4) physical examination findings which revealed little in the way of limitations of range of motion or strength in the upper and lower extremities; (5) medication noncompliance and evidence that Claimant's hypertension is controllable when taking medications as prescribed; and (6) Claimant's ability to afford cigarettes and alcohol despite his testimony that he cannot afford medications for hypertension. (R. 23).

Frequent medical visits "generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *21, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . . However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The inability to afford medical treatment is a sufficient reason for infrequent medical visits. *Id.*, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8. *Id.*; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds). Here, the ALJ explicitly acknowledged Claimant's "contention that he is constrained financially from seeking medical treatment" in conformity with S.S.R. 97-6p. (R. 23). However, the ALJ noted further the availability of medical treatment to those "in dire financial straits" and the fact that Claimant "has been specifically referred to these sources." For example, in a progress report from Wake Heart and Vascular Associates dated 9 July 2009, it was noted that Claimant was "given information concerning free clinic for primary care provision." (R. 400).

8

Despite identifying this assignment of error as an erroneous evaluation of Claimant's credibility due to improperly penalizing Claimant for failing to seek treatment that he could not afford, Claimant does not dispute the ALJ's characterization of the record in this regard and in fact, provides no argument in support of his inability to afford medication. Rather, Claimant's credibility argument is essentially limited to pointing out the following evidence without any explanation how this evidence signifies an improper credibility determination by the ALJ: (1) clinical and laboratory findings of multilevel disc degeneration, segmental canal stenosis and cervical spondylosis (R. 274-75); (2) the opinion of consultative examiner, Gonzalo A. Fernandez, M.D., who found Claimant limited to standing and walking "2 to possibly 4 hours with frequent breaks and to sit 4 hours with regular breaks" (R. 338); and (3) a 16 May 2007 CT scan indicating "cerebral atrophy" and an "old lucunar infarction in the right putamen and corona radiata" (R. 303). Pl.'s Mem. at 5-7.

With respect to the various diagnoses and laboratory findings, the diagnosis of a condition is not enough to prove disability; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition"). Claimant provides no argument as to how the above findings or diagnoses support his testimony or affect his ability to perform work-related functions. As for Dr. Fernandez' opinion, the ALJ's decision to accord this opinion limited weight is supported by substantial evidence, as described below. (R. 23). Finally, with respect to the findings of the May 2007 CT scan, Claimant contends "[i]nstead of weighing these factors when assessing his insight and mentation, the ALJ [] decided that [Claimant] was making bad choices [i.e., purchasing cigarettes and alcohol]." Pl.'s Mem. at 7. The ALJ discussed in detail Claimant's admission to WakeMed Hospital on 16 May 2007 for acute alcohol

9

intoxication and alcohol withdrawal. (R. 19, 248, 286, 305-06). The ALJ acknowledged Claimant's mental impairment of alcohol abuse but found it did not prevent Claimant from performing substantial gainful activity and cited evidence in support of this finding, including Claimant's lack of testimony as to any mental impairment and the lack of any mental health treatment (R. 21, 25). Claimant does not dispute the ALJ's alcohol abuse discussion and provides no insight into how the May 2007 CT record calls into question the ALJ's reliance on Claimant's continued purchases of cigarettes and alcohol despite an alleged lack of funds, as well as Claimant's failure to take advantage of free or low cost treatment for the impoverished.

The record does not indicate that Claimant sought medical treatment and was denied due to the lack of funds. Moreover, Claimant does not argue that free community resources were unavailable. *See* S.S.R. 82-59, 1982 SSR LEXIS 25, *9-*10, 1982 WL 31384, at *4 (explaining "[a]lthough a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community"). Indeed, the July 2009 treatment notes indicates Claimant was given information regarding a free clinic for primary care provision. (R. 400). The ALJ properly relied, in part, on Claimant's failure to take advantage of free medical services and his purchasing of cigarettes and alcohol in finding Claimant less than fully credible. *See Roten v. Astrue*, 2011 U.S. Dist. LEXIS 113963, at *15-*16, 2011 WL 4596148, at *6 (W.D.N.C. Mar. 31, 2011), adopted, 2011 U.S. Dist. LEXIS 114055, 2011 WL 4596129 (W.D.N.C., Sept. 30, 2011) (finding ALJ's credibility analysis supported by substantial evidence, which included the observation that claimant "spent money on cigarettes" and the lack of evidence that claimant "took advantage of free clinic assistance or low cost treatment services"); *Blankenship v. Astrue*, No. 5:07-685, 2009 U.S. Dist. LEXIS 26109, at *22-*23, 2009 WL 899426, at *8 (S.D.

W. Va. Mar. 30, 2009) (finding the ALJ's credibility discussion, including claimant's ability "to afford a nicotine habit at a pack of cigarettes per day" despite his alleged inability to afford medication, as a factor weighing against claimant's credibility). The ALJ also relied on physical examination findings indicating Claimant had good muscle bulk and tone, normal strength in his upper and lower extremities and full range of motion of his neck, shoulders, elbows, forearms, hips, knees, ankles, wrists, hands and fingers. (R. 20, 206, 338). The ALJ noted further that Claimant's blood pressure was controllable when taking medications as prescribed. Finally, the ALJ noted further that Claimant's work history cast doubt on Claimant's credibility as Claimant had not worked since 2001 – over two years before his alleged disability began – suggesting Claimant's "difficulties in working stem from issues other than his perceived disability." (R. 24).

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994)("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this

11

Case 5:11-cv-00243-FL   Document 38   Filed 06/28/12   Page 11 of 16

issue is without merit.

## II. The ALJ properly evaluated the opinions a state agency consultants.

Claimant contends the ALJ improperly evaluated the opinions of state agency examining consultant, Dr. Fernandez, dated 22 October 2007, and state agency non-examining consultant, Frank Virgili, M.D., dated 22 April 2008. Pl.'s Mem. at 5, 8-9. This court disagrees.

"Findings of fact made by State agency . . . consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in her decision. *Id.*; *see also* SSR 96-6p, 1996 SSR LEXIS 3, at *2, 1996 WL 374180, at *1. Of course, an ALJ is under no obligation to accept any medical opinion. *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Upon evaluation of Claimant, Dr. Fernandez opined that Claimant "should be expected to stand and walk 2 to possibly 4 hours with frequent breaks and to sit 4 hours with regular breaks" and

12

"is limited by his generalized unsteadiness, and uncontrolled high blood pressure," effectively finding Claimant capable of sedentary work only.[4] (R. 338). In a Physical RFC Assessment, Dr. Virgili assessed Claimant as capable of performing light work with no restrictions except avoidance of concentrated exposure to hazards. (R. 398, 392, 395). In assessing these opinions, the ALJ accorded them limited weight, finding them unsupported by the record as a whole.[5] The ALJ explained physical examination findings, including those of Dr. Fernandez, revealed little in the way of limitations of range of motion or strength in Claimant's upper and lower extremities. (R. 20, 205-06, 338, 368). The ALJ noted further Claimant's lack of treatment from an orthopedic specialist, the lack of objective tests establishing significant DDD which would impact Claimant's ability to stand, walk, lift or carry and Claimant's infrequent use of over-the-counter medications. (R. 23).

Upon reviewing Claimant's argument, it is apparent that Claimant believes the ALJ improperly weighed the evidence before her. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). In this case, the ALJ sufficiently evaluated the medical evidence in accordance with the regulatory guidelines and adequately explained the weight allocated to the

---

[4] Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3.

[5] In acknowledging her duty to consider RFC assessments and findings of fact made by state agency consultants, the ALJ specifically discussed the findings by both Drs. Virgili and Fernandez. (R. 23). Immediately following her summary of said findings, the ALJ explicitly assigned "limited weight" to Dr. Fernandez' opinion only. *Id.* While the ALJ did not expressly identify the weight accorded to the opinion of Dr. Virgili, the ALJ's medium RFC finding, which contradicts the light RFC finding of Dr. Virgili, clearly indicates this is so.

opinions of Drs. Fernandez and Virgili. Accordingly, the ALJ was within her discretion in not giving controlling weight to the opinions of Drs. Fernandez and Virgili. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

### III. The ALJ's improper step four analysis is not reversible error.

Finally, Claimant argues the ALJ's RFC finding is "not supported by her own decision," and in particular, points to the ALJ's finding at step four that Claimant "is unable to perform his past relevant work ("PRW") at a medium exertional level as it was semi-skilled." Pl.'s Mem. at 9; (R. 24). Claimant argues "[r]uling out an inability to return to [PRW] at Step 4 because it was semi-skilled infers that one cannot in fact perform [a full range of] medium work." *Id.*

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of claimant's past relevant work ("PRW") and then determines whether claimant's impairment(s) prevent claimant from performing such work. 20 C.F.R. §§ 404.1520(e)(f); 416.920(e)(f). Here, the ALJ found Claimant had the RFC to perform a full range of medium work yet at step four, found Claimant could not perform his past relevant work as a truck driver – a job classified as medium work – because it was semi-skilled.[6] (R. 24, 49); DOT 905.663-014, Truck

---

[6] Semi-skilled work is defined as follows:

> [W]ork which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled

14

Driver, Heavy, 1991 WL 687708. The Commissioner concedes the ALJ erred in concluding Claimant could not perform his PRW as a truck driver in light of the ALJ's RFC finding that Claimant was capable of performing a full range of medium work. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") at 18. As the Commissioner notes, the ALJ found Claimant did not have a severe mental impairment at step two and included no mental limitations in her RFC finding. Def.'s Mem. at 18; (R. 21). Accordingly, the ALJ's finding that Claimant could not perform semi-skilled work contradicts the ALJ's RFC finding.

The court concludes, however, that this error was harmless because the ALJ continued onto the last step in the sequential evaluation process. Specifically, the ALJ found that on the basis of Claimant's residual functional capacity for a full range of medium work, Medical Vocational Rule 203.22 and Rule 203.15 allowed for the determination that Claimant was not disabled. (R. 25); *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)(explaining the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination); *Diorio v. Heckler*, 721 F.2d 726, 728(11th Cir. 1983)(when an incorrect application of the regulations results in harmless error because the correct application would not alter the ALJ's ultimate conclusion, there is no basis for reversal); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)). Thus, the court

---

> work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568.

concludes the ALJ did not commit reversible error at step four as Claimant has not shown that he was harmed by the ALJ's error.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-34] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 28th day of June, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge